IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:20-CR-00798-SO |
|---|---|---|
| Plaintiff, | ) | JUDGE SOLOMON OLIVER. JR. |
| v. | ) | UNITED STATES' RESPONSE IN OPPOSITION TO PRO SE DEFENDANT ARTHUR FAYNE'S MOTION TO MODIFY SPECIAL CONDITIONS OF SUPERVISED RELEASE |
| ARTHUR FAYNE | ) | |
| Defendant. | ) | |

The United States of America, represented by its counsel David M. Toepfer, the United States Attorney, and Assistant United States Attorney Brian M. McDonough, respectfully opposes Defendant Arthur Fayne's Pro Se Motion to Modify the Special Conditions of Supervised Release ("Motion to Modify") (ECF No. 140). The United States asks this Court to deny the motion, as Fayne has not demonstrated that the special conditions set by this Court have impeded his supervised release objectives.

## STATEMENT OF THE CASE

### I. BACKGROUND

Fayne was the owner of Business Development Concepts, LLC ("BDC"), an Ohio company responsible for overseeing construction projects, including the East Side Market project. This project was sponsored by the nonprofit corporation Northeast Ohio Neighborhood Health Services, Inc. ("NEON") and aimed to redevelop a vacant building into a grocery store, healthcare facility, and community center in Cleveland, Ohio's Glenville neighborhood. (R. 70: PSR, PageID 1132). Fayne not only conducted business with NEON, which operates as a federally qualified health center network, but also served as the vice president and a board member of its for-profit subsidiary, Community Integrated Services, Inc. ("CIS"). He additionally collaborated with The Albert M. Higley Company ("AMHigley"), the general

contractor for the East Side Market project, and Crescent Digital, the company responsible for installing the project's audio-visual technology equipment. (Id.).

Between 2017 and 2018, Fayne defrauded NEON and CIS by creating and submitting fraudulent invoices for work done by AMHigley and Crescent Digital on the East Side Market project. Fayne then diverted part of the payments wired for these invoices to BDC. This included $759,105.92 owed to AMHigley and $125,923.86 owed to Crescent Digital. (Id., PageID 1132-34; R. 106: Voss, Trial Trans., PageID 1737-50; R. 106: Thompson, Trial Trans., PageID 1767-70). Fayne used the embezzled funds for personal expenses such as gambling at the JACK Cleveland Casino, shopping, and travel. He deceived others by claiming that non-payments to the contractors were due to project overruns and delays in payment from the City of Cleveland. See generally, (R. 107: Vaughan, Trial Trans., PageID 1983-84, 2009-10; R. 108: Heines, Trial Trans., PageID 2253-54). Ultimately, Fayne's embezzlement resulted in a total loss of $933,634.38, (R. 70: PSR, PageID 1134-35), and the City of Cleveland ended up paying twice for the work done by AMHigley provided. See, e.g., (R. 106: Austin, Trial Trans., PageID 1876-79).

## II.  PROCEDURAL HISTORY

On December 20, 2023, a Northern District of Ohio grand jury indicted Fayne for nine wire fraud counts concerning the above embezzlement schemes, in violation of 18 U.S.C. §§ 1343 and 2. (R. 1: Indictment, PageID 1-7). Fayne proceeded to trial and was convicted on all counts. (R. 47: Verdicts, PageID 218-19).

Before sentencing, the U.S. Probation Department prepared a presentence report that calculated the losses stemming from Fayne's scheme, including $759,105.92 for AMHigley, and $125,923.86 for Crescent Digital, thus totaling $933,634.38. (R. 70: PSR, PageID 1133-34). It

also recommended a two-level sentencing enhancement for obstructing justice based upon Fayne's attempt to reduce the loss amount and restitution he owed to NEON when he sent NEON's Chief Financial Officer an email requesting increased fees owed to Fayne's company. (Id., PageID 1134-35).

On March 12, 2024, this Court sentenced Fayne to concurrent 18-month sentences on each count. (R. 73: Judgment, PageID 1178-79). This included adopting the presentence report's loss calculation, (R. 70: PSR, PageID 1132-35), since Fayne could not account for the funds he embezzled from NEON, which were owed to AMHigley and Crescent Digital. (R. 95: Sentencing Trans., PageID 1368-69). Based on a preponderance of the evidence, this Court found that Fayne took "monies for his own use when, in fact, he represented that he was taking that money to pay off Higley" and that Higley, in turn, "actually had to pay twice on that, even though some of the monies came through Government sources later on in the history of the project." (Id., PageID 1369). The Court also applied the recommended obstruction of justice sentencing enhancement. (Id., PageID 1370).

The Court entered final judgment against Fayne on March 14, 2024. (R. 73: Judgment, PageID 1178). There were ten special conditions listed regarding Fayne's supervised release. (Id. at 1290-91). Among these special conditions were: 1) financial disclosure; 2) no new debt/credit; 3) financial windfall condition; 4) alcohol restriction; 5) substance abuse treatments and testing; 6) mental health treatment; 7) gambling restriction; 8) gambling addiction treatment; 9) no contact with victim; and 10) employment restrictions. (Id.).

On September 24, 2025, Fayne filed a Motion to Modify Special Conditions of Supervised Release. (R. 140: Motion to Modify, PageID 2678-2703). Fayne seeks to modify the special conditions of his supervised release relating to employment, new credit, and travel. (Id.).

3

Fayne alleges these special conditions have prevented him from obtaining employment. (R. 140: Motion to Modify, PageID 2680).  Specifically, Fayne alleges, "The current interpretation of this condition effectively bars Defendant from serving in any meaningful professional capacity, even when safeguards are in place, thereby frustrating the very purpose of supervised release: to promote reentry, lawful employment, and restitution." (Id.).  The special condition relating to employment restriction states, "You must not engage in an occupation, business, profession or volunteer activity that would require or enable you to distribute funds on behalf of another business entity without the prior approval of the probation officer." (R. 90: Amended Judgment, PageID 1291).  Presently before the Court is Fayne's Motion to Modify. (R. 140: Motion to Modify, PageID 2678-2703).

## LAW AND ARGUMENT

Special conditions of supervised release must:

(1) [be] reasonably related to the factors set forth in [18 U.S.C.] section 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D);
(2) [involve] no greater deprivation of liberty than is reasonably necessary for the purposes set forth in section 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D); and
(3) [be] consistent with any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. § 994(a)…

(18 U.S.C. § 3583(d); United States v. Kingsley, 241 F.3d 828, 836 (6th Cir. 2001).  18 U.S.C. § 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D) provides the following factors:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed—
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

(18 U.S.C. § 3553.). Furthermore, conditions of supervised release will be upheld if reasonably related to rehabilitation of the defendant, goals of probation, and protection of the public. United States v. Berridge, 74 F.3d 113, 118 (6th Cir. 1996).

Here, Fayne alleges that the special conditions in place prevent him from "serving in any meaningful professional capacity, even when safeguards are in place, thereby frustrating the very purpose of supervised release: to promote reentry, lawful employment, and restitution." (R. 140: Motion to Modify, PageID 2678-2703, 2680). However, the condition that prevents Fayne from handling finances is directly related to his underlying charge and relates directly to rehabilitation of the defendant, goals of probation, and protection of the public. Thus, the special conditions should not be modified.

The special condition relating to employment restriction states, "You must not engage in an occupation, business, profession or volunteer activity that would require or enable you to distribute funds on behalf of another business entity without the prior approval of the probation officer." (R. 90: Amended Judgment, PageID 1286-94, 1291). Despite the offer letter of employment to Fayne including the special condition, a specific responsibility listed on the letter is "Coordination and Oversight of Professional Services (Accounting, Bookkeeping, Payroll)," (R.140-3: Exhibit C, PageID 2708) which is specifically what this special condition was put in place to prevent. At this position, Fayne would have direct access to the funds of the business and would be working directly with the funds through accounting, bookkeeping, and payroll. Fayne's gambling addiction while working at BDC led to his embezzlement and indictment.

The special condition was not imposed to prevent employment, but to prevent involvement with the funds of the business which Fayne obtains employment, as his underlying charge was for wire fraud. In relation to § 3553(a)(1), this special condition is reasonably related

5

to the nature and circumstance of the offense, which here is wire fraud, and the history and characteristics of the defendant.  Further, in connection with § 3553(a)(2)(B) and (a)(2)(C), this special condition is necessary to afford adequate deterrence to criminal conduct and to protect the public from further crimes of the defendant.  Here, Fayne could be deterred from criminal conduct if he does not have access to the funds of the business.  Not allowing Fayne access to funds also protects the public from future crimes because it does not provide opportunity for Fayne to commit crimes.

Fayne is incorrect in saying that this special condition prevents him from "serving in any meaningful professional capacity, even when safeguards are in place, thereby frustrating the very purpose of supervised release: to promote reentry, lawful employment, and restitution." (R. 140: Motion to Modify, PageID 2678-2703, 2680).  The factors set forth in § 3583 and § 3553 are in place to ensure there is a reasonable sentence and the goals of the justice system are achieved. This special condition does not prevent him from serving in any professional capacity; it prevents him from obtaining roles in which he is directly involved with the funds of the business. This special condition is reasonably related to rehabilitation of Fayne, goals of probation, and protection of the public and therefore should be upheld.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court deny Fayne's motion to modify special conditions of supervised release because Fayne has failed to show that the special conditions imposed by this Court have frustrated his supervised release

goals. To the contrary, they are reasonably related to Fayne's rehabilitation, goals of probation, and protection of the public.

          Respectfully submitted,

          DAVID M. TOEPFER
          United States Attorney

By:   /s/ Brian M. McDonough
       Brian M. McDonough
       Assistant United States Attorney
       United States Court House
       801 West Superior Avenue, Suite 400
       Cleveland, OH 44113
       (216) 622-3965
       Brian.McDonough@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 7, 2025, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. A copy was also sent by regular U.S. Mail to Pro Se Defendant Arthur Fayne, 19 Kingston Drive, Aurora, OH 44202.

          /s/ Brian M. McDonough
          Brian M. McDonough
          Assistant U.S. Attorney